# CASES

IN THE

# SUPREME COURT

OF

# PENNSYLVANIA.

Lessee of PEMBERTON and others *against* HICKS.

CASE stated, to be considered in the nature of a special verdict.

1799.

*Monday,*
December 23.

" *Joseph Galloway* intermarried with *Grace Growdon*, by " whom he had issue born alive (and still remaining alive) be- " fore the death of *Lawrence Growdon* father of the said *Grace;* " which said *Lawrence* being seised in fee simple of the premi- " ses in the declaration mentioned, by his testament and last " will duly executed devised the same with other real estate " to the said *Grace Galloway* and a certain *Elizabeth Nichol-* " son his two daughters, in fee. *Thomas Nicholson* the husband " of the said *Elizabeth*, and *Joseph Galloway* and *Grace* his " wife, in due form of law made partition by writ of the premi- " ses to them devised as aforesaid, in which said partition the " premises in the declaration mentioned were allotted with other " real estate to the said *Grace Galloway*, and the said *Joseph Gal-* " *loway* in right of the said *Grace* took the exclusive possession " thereof under the said allotment on the 24th of *December,* " A. D. 1773. The said *Joseph Galloway* afterwards by act of " Assembly passed on the 6th of *March* 1778 was required to " surrender himself under pain of being attainted of high trea- " son. The said *Joseph Galloway* did not surrender himself.

The curtesy estate of the husband in the lands of the wife is not forfeited to the commonwealth for the life of the husband by his attainder for treason committed in her lifetime and after issue born; but the wife's estate is discharged from the curtesy.

VOL. I.       A

1799.

Lessee
of
PEMBER-
TON
v.
HICKS.

" accordingly, and thereupon became and stood attainted of
" high treason to all intents and purposes and his estate for-
" feited to the commonwealth, the said *Grace Galloway* being in
" full life. The said premises were afterwards seized and sold
" by the agents for forfeited estates, and the same conveyed to
" those under whom the defendants hold, by the common-
" wealth. The said *Joseph Galloway* so being attainted depart-
" ed out of the United States into parts beyond sea and there
" continues in full life. The said *Grace Galloway* continued in
" the United States, and afterwards, to wit on the 6th *February*
" 1782, died seised in fee simple of the premises in the declara-
" tion mentioned, having first, to wit on the 20th of *December*
" 1781, duly made and published her last will in writing where-
" by she devised the same to *Owen Jones* and others, the sur-
" vivors of whom are the lessors of the plaintiff. The plaintiff
" entered and was ousted by the defendant. Upon these facts the
" question submitted to the court is whether the law be with the
" plaintiff. If it is, judgment to be entered for him with six
" pence damages and six pence costs ; if it is not, judgment to
" be entered for the defendant."

The point to which the arguments were directed, was whe-
ther *Joseph Galloway*, who was tenant by the curtesy initiate
of the premises, had such an estate therein as was forfeited to
the commonwealth upon his attainder by act of Assembly passed
the 6th *March* 1778 ; the 5th section of which is as follows :
" All and every the *lands, tenements, hereditaments*, debts or
" sums of money, or goods or chattels whatsoever, and gene-
" rally the estates real and personal of what nature or kind
" soever they be, within this state, whereof the aforesaid *Joseph*
" *Galloway* &c. shall have been *possessed of, interested in*, or en-
" *titled unto*, on the 4th day of *July* 1776, or at any time after-
" wards *in their own right* or to their use, or which any other
" person or persons shall have been possessed of interested in
" or entitled unto to the use of or in trust for them or any of
" them, shall according to the respective estates and interests
" which the persons aforesaid or any in trust for them or any
" of them shall have had therein, stand and be forfeited to this
" state." 1 *St. Laws* 752. The case therefore embraced not only
the proposition whether upon general principles an estate of te-
nant by the curtesy initiate is forfeited to the commonwealth by

an attainder for treason, but also whether it was not made forfeitable even against general principles, by this act of assembly.

At *March* term 1798 it was argued before all the judges by E. *Tilghman* for the plaintiff, and by *Dallas* for the defendant; and again at *December* term 1798 by *Lewis* for the plaintiff, and by *Ingersoll* for the defendant.

1799.

Lessee
of
PEMBER-
TON
v.
HICKS.

For the plaintiff. A consideration of the case under three points of view will present the main question in such a manner as to shew clearly that the law is with the plaintiff. 1. What was *Galloway's* estate before issue? 2. What was it after issue? 3. How does the forfeiture operate after issue?

1. By the marriage the husband becomes seised in right of his wife of her inheritance, and is entitled to the rents and profits during coverture, to his own use. This is an unconditional consummate right vested in him *eo instanti* of the marriage, and upon his attainder the king shall take the rents and profits as forfeited during the coverture. 1 *H. H. P. C.* 251. 253. But the marriage itself does not give the husband a freehold, nor can he declare in covenant that he is seised in his demesne as of freehold in right of his wife; he must declare on a seisin in fee in himself and his wife in right of his wife, otherwise it is bad. *Polyblank* v. *Hawkins.* (a) The fee and the frank tenement therefore remain in the wife undivested by the marriage, and neither of them is forfeited by the attainder of the husband. *Co. Litt.* 351.

2. Upon the birth of issue a new consideration in law takes place; and in as much as by the law of nature he is bound to support this issue, the law of *England* gives him a title to have an estate for his life in the inheritance of his wife *if he shall survive her.* The estate however is not actually imparted to him; it is both eventual and conditional; and the freehold is not taken from the wife and vested in the husband *unless* and *until* he shall happen to survive her. He has a title, but no estate. A *title* is the means or cause by which a man has the just possession of his property. 2 *Bl. Com.* 195. A man is entitled to the estate by feoffment, but he has no estate before livery. He has also a title to take an estate upon a condition precedent, but he has neither the estate nor the right to the land until the condi-

(a) *Doug.* 315.

tion is performed. So the husband has a title or the means conferred by law of taking the estate by the curtesy upon the conditions that his wife be seised in deed as well as in law, that the seisin be of an estate to which the issue between them is inheritable, that he have issue by her, and that he survive her, otherwise not. *Co. Litt.* 30. *a.* and *sec.* 52.

*Littleton* in his definition of a tenancy by the curtesy, *sec.* 35. expressly refers the estate and seisin of the husband to the happening of the last conditional event. " *If the wife dieth,* " the husband *shall* have the land during his life." And in *sec.* 90. he calls it a *title* only in the husband to have the tenements " if he survive the wife." " Tenant by the curtesy is he who " *after* his wife's death (having had issue by her inheritable) is " introduced into her inheritance and has an estate for life " therein." 2 *Bac. Abr.* 218. *Doc. and Stud. lib.* 1. *c.* 27.

But the estate is said to have a beginning after issue, which is respected in law for divers purposes; these purposes however as enumerated by Lord *Coke* fully prove that the husband has no seisin of the land either in law or in deed in his own right until the death of his wife.

*First.* After issue had the husband shall do homage alone. The reason for this appears in *Co. Litt. sec.* 90. " None shall " do homage but such as have an estate in fee simple or fee tail " in his own right or in right of another. For it is a maxim in " law that he that hath an estate for his own life *shall neither* " *do homage* or take homage. For if a woman hath lands in fee " simple or fee tail which she holdeth of her lord by homage, " and taketh husband and hath issue, the husband shall do " homage, because he hath *title* to have the tenements by the " curtesy of *England if he survive his wife.* But if the wife dies " before homage done in the life of the wife, and he holdeth " himself in as tenant by the curtesy, then he shall not do " homage, because he then hath an estate but for term of his " own life." The reason of his doing homage alone for the fee, is that he has a title to the curtesy *if he survive his wife,* for if he had an estate for his own life at that time, homage would not be due for it.

*Second.* If after issue the husband makes a feoffment in fee, and the wife dies, the feoffee shall hold it during the life of the husband, and the heir of the wife shall not during that time recover it in a " *sur oui in vita.*" Now the reason of the case de-

monstrates that the husband had no estate by the curtesy vested in him at the time of the feoffment; for if he had, the feoffment would have worked a forfeiture, and the land might have been recovered against the feoffee. *Co. Litt.* 251. *a. b.* 252. *a.* 333. *b.*

*Third.* Tenant by the curtesy cannot claim by a devise and waive his curtesy, because by 29 *E.* 3. *fo.* 27. the freehold *commenced* in him before the devise for term of his life. The reason of this is, not because he had the freehold in him, but because the title to it *commenced* before the devise. For the law, where a man has two titles to take an estate, will adjudge him in by force of the elder, and will not permit him to claim by the latter title. *Litt. sec.* 659.

After issue therefore the husband has no greater estate than before, unless he survive his wife. He has a title to have an estate upon certain conditions; and although this estate has thus a beginning respected for certain purposes, yet Lord *Coke* confines them to the three above mentioned, which is a strong argument to shew that it is respected for no other purpose whatever. It is admitted by lord keeper *Coventry*, when attorney general, arguing for a forfeiture to the crown in *Sheffield and Radcliff*, (a) " That a tenant by the curtesy cannot *grant* " in the life time of the wife his estate by the curtesy to another," because nothing shall pass by grant but what lawfully may pass, and a man cannot lawfully pass an estate before he has it. It seems to follow therefore that not having the estate he cannot forfeit it for treason, which is the third point.

3. It cannot be questioned that if the husband dies before the wife, the estate by the curtesy is never completed. The last condition is not performed; and however the beginning of the estate be respected, it has at last by the death of the husband, living the wife, turned out to be an ineffectual beginning. By the attainder of *Galloway* he became *civiliter mortuus*, and as to all benefits to be derived from the law, he is as perfectly unknown to the law as if he were naturally dead. He may indeed *by his own contract* take for the benefit of the king; but the law, which does nothing in vain, will not give him an inheritance or freehold by *act of law*, for he cannot keep it. 2 *Vin.* 260. *pl.* 20. *Collingwood* v. *Pace* (b). Upon the death of the wife the estate by the curtesy vests in the husband by act of law, and it

*(a) Godb.* 323.    (b) 1 *Ventr.* 417.

**1799.**

**Lessee of PEMBERTON v. HICKS.**

1799.

Lessee
of
PEMBER-
TON
v.
HICKS.

must therefore follow that in case of his attainder the law will not devolve the estate upon him, for it will do a thing perfectly idle and vain, as the husband cannot keep it.

The cases in the books, though to this point they are not numerous, support the position.

" A feme seised in fee takes baron and has issue, and after " the husband is attainted in the life of his wife, and after the " king pardons him; he shall not be tenant by the curtesy on ac- " count of the issue had before attainder. Otherwise, if the hus- " band had issue after the pardon." 13 *H.* 7. 17.

This case, the authority of which cannot be questioned, is conclusive upon the present controversy. Even if the husband be restored by pardon, yet he cannot be tenant by the curtesy in virtue of the issue born before his attainder. After the corruption of the inheritable blood between him and his issue, the law will not devolve upon him the curtesy in consequence of that issue, although issue born afterwards will produce a new title upon which the estate may ultimately accrue. The inheritance of the wife is discharged of the first title to the curtesy; *a fortiori* if he is never restored the estate by curtesy can never be completed, and as he cannot by possibility take it in any way but by act of law, the king cannot have it, and the wife's estate must be discharged of it for ever. We have accordingly the warrant of subsequent authorities for this conclusion from the case in the year book. " Persons attainted of treason or felony " shall not be tenants by the curtesy, for the law intended to " give the inheritance only to those who were capable of hold- " ing it *tota vita sua:* and in these cases their title shall never " arise even for the benefit of the king, but the wife's estate " shall be discharged of it for ever." *Bro. tit. Curtesy*, 15. *Staundf.* 196. 2 *Bac. Abr.* 219.

In the case of *Sheffield and Radcliff* the attorney general *Coventry* agrees that a tenant by the curtesy in the life of the wife cannot grant the estate by the curtesy to another, " yet," he adds, " he may forfeit it for treason or felony *by way of dis-* " *charge*." There is nothing in this case but the wife's estate that can be discharged; for if the forfeiture accrue to the crown, the incumbrance of the curtesy upon the inheritance of the wife is in no manner affected, and of course no discharge is produced.

The same doctrine is to be gathered from certain general positions by Lord *Coke* and Lord *Hale* which would certainly have

been qualified so as to exclude this doctrine had there been a question of its truth. " Baron entitled in right of feme is attainted, the king shall hold *during the coverture.*" 1 *H. H. P. C.* 251. " Forfeiture does not extend to lands in right of the " wife, *but only during the coverture.*" 3 *Inst.* 19. And as in neither instance is it mentioned whether issue was before or after attainder it may be concluded that it is not material, and that the king can hold in either case during coverture only.

Finally. The act of assembly does not enlarge the objects of forfeiture to such a degree as to embrace this kind of interest. It is a mere condition upon the performance of which the estate will arise, but which is not forfeited on attainder by the general words of the law. 3 *Co.* 2, 3. 13 *Vin.* 441. *pl.* 14. 3 *Inst.* 19. The forfeiture is however confined to those rights and estates which *Galloway* had on the 4th day of *July* 1776, or at any time afterwards, *according to the respective estates or interests;* at the time of attainder his estate was not complete, and by the attainder the possibility of its completion was gone, and nothing could afterwards arise.

For the defendant. Upon general principles a person attainted of treason forfeits all his lands and tenements of inheritance whether fee simple or fee tail; all his rights of entry on lands or tenements which he had at the time of the offence committed or at any time afterwards, and also the profits of all lands and tenements which he had in his own right for life or years so long as such interest shall subsist. 4 *Bl. Com.* 374. 2 *Woodeson,* 504.

Before issue born, the interest of *Galloway* was it is true a mere possibility; but instantly upon the birth of issue he began to have a " *permanent* interest in the land;" and both the rights and duties which attend upon that interest shew him to possess an estate for life, not to *arise* upon the death of the wife before him, but subject to be defeated by the happening of his death before hers. He is entitled to do homage alone for the wife's lands, which he cannot do while merely seised of the fee in her right; and the reason assigned by Lord *Coke* is " because he by " having of issue is entitled to an estate for term of his own " life in his own right, and yet is seised in fee in right of his " wife, so as he is not *bare* tenant for life." *Co. Litt.* 67. *a.* It is impossible for words more explicitly to convey the idea that

1799.

Lessee
of
PEMBER-
TON
.v.
HICKS.

1799.

Lessee
of
PEMBER-
TON
v.
HICKS.

by the birth of issue the husband becomes tenant for life, and that his interest is not limited to a mere title to have such an estate upon a future contingency. Moreover he becomes one of the *pares curiæ*, and tenant to the lord; and in the language of *Blackstone*, the estate is so *vested* in him, that although it is conferred for the maintenance of the heir, it is not suffered to determine by the subsequent death of the infant, or his coming of age. 2 *Bl. Com.* 126. He may do many acts to charge the lands. *Ibid.* Avowry shall be made only upon him in the life of the wife. *Co. Litt.* 30. *a.* If he makes a feoffment in fee the feoffee shall hold during the husband's life. *Ibid.* And having an *estate vested* in him by birth of issue, which from its union with the seisin in fee entitles him to do homage alone, whereby he becomes tenant to the lord and bound to do him suit in his court, with a right moreover to charge the lands in various ways, and by feoffment to convey a good estate for his own life, it seems necessarily to follow that he may forfeit it to the king for treason. For these powers and obligations shew conclusively that the husband has an estate for life in his own right, and it is a maxim in law that what a man has in his own right he may forfeit. *Harris's case.* (a)

That *Galloway* is civilly dead as to all actions there is no doubt: but as to all his rights he is completely represented by the commonwealth. If it were not so, whence comes the right of the commonwealth to take the profits of the wife's lands during coverture? His existence is still contemplated in law for the beneficial purpose of preserving his rights in the commonwealth; and although they may continue subject to every defeasance that would have operated before attainder, yet here the estate by the curtesy has escaped the only one to which it was subject, and it remains an indefeasible estate for life. The contrary position, against the obvious policy of the law, which however distressing it may be is nevertheless to be judicially recognised, would accelerate the descent to the heir, and confer a bounty on the child for the treason of his father.

The only authorities which oppose this clear result from all that has been written upon the nature of the husband's estate, are the 13 *H.* 7. 17. and the admission of *Coventry* while attorney general.

(a) 4 *Leon.* 112.

The first is a mere *dictum* by *Keble;* and whether at that time a judge is not known. It does not appear in the year book what was the question under consideration, nor whether there were any parties before the court. It could not have been a question similar to this, for by a reference to *Noy* 159. we find it to have turned upon the corruption of blood, and whether upon the father's attainder, the sister might be heir to the brother of the mother's estate. If the pardon contained words of restitution the point might have been settled in conformity with *Keble's* opinion without bearing in the least upon the question now before the court. This case therefore is worthy of little consideration.

The admission by *Coventry* has still less weight. It was not the point adjudged; and he cites as his authority the above case of 13 *H.* 7. 17. which contains nothing to his purpose. There is not a syllable in it of a forfeiture *by way of discharge;* and indeed it is in itself an expression so absurd that it is not probable he could have found an authority for it any where.

The quotation from *Bacon's Abridgment,* and the sentiments of elementary writers are all referable to this *dictum,* and admission; and the present case stands therefore upon its own peculiar footing; the clear estate of the husband, and the sweeping forfeiture to the commonwealth of every estate which *Galloway* had on the 4th *July* 1776, or at any time afterwards.

If however a doubt can arise upon the authorities which apply to forfeitures in *England,* the comprehensive terms of the act of Assembly must put them to rest; for if *Galloway* had *an estate of any nature or kind soever* in the premises; if he was in any way *interested in or entitled unto* the lands, his estate, his interest and his title are forfeited to the commonwealth and the plaintiff cannot recover.

*Cur. adv. vult.*

On the 23d *December* 1799 the Judges delivered their opinions. But *M'Kean,* who presided at the argument as chief justice, was not at this time on the bench, having been chosen governor of the commonwealth in *October* 1799.

SHIPPEN C. J. The question to be decided in this case is whether the curtesy estate of the husband in the lands of the wife is forfeited to the commonwealth for the life of the husband by an attainder for treason committed by him in her life time and after issue born.

VOL. I.                          B

*[margin: 1799. Lessee of PEMBERTON v. HICKS.]*

In every definition of an estate by curtesy, the death of the wife is an essential ingredient to complete the estate in the husband; before that event, and even after issue born, there is but a possibility that such an estate may vest, but it does not actually vest till the contingency happens.

The husband's estate during her life is of a different and superior kind; it is an estate of inheritance in *her right*. Upon her death that estate ceases, and the estate by curtesy vests. A feoffment in fee made by him in her life time will be no forfeiture of his future estate for life; but the feoffee shall hold the estate during the life of the husband against the *heir*, which he could not do if the estate for life had vested, because in that case it would have been forfeited, and have fallen into the inheritance. *Co. Litt.* 30. *a.*

If then the curtesy estate does not vest in the husband before the death of the wife, does not his previous attainder for treason effectually prevent its ever vesting at all? There is no doubt but an attainted person or an alien may contract for and purchase an estate so as to enable him to take it although not for his own benefit, yet for the benefit of the commonwealth; but there is an established distinction between an estate's coming to such person by *contract* and its devolving to him by *act or gift in law:* in the latter case no title can be derived to the alien or attainted person even for the benefit of the crown.

Lord *Hale* in his argument in the case of *Collingwood* and *Pace* in *Ventr.* 417. states the law to be that an alien or attainted person cannot on that principle take by descent, *curtesy*, or dower, for the benefit of the crown; and in 2 *Bac. Abr.* 219. it is said the title of the husband to the curtesy shall never arise, but the wife's estate shall be discharged of it forever.

In 3 *Inst.* 19. Lord *Coke*, treating of forfeiture for treason, says it extends not to lands in right of a wife, but only during coverture. Lord *Hale's* doctrine is to the same effect in 1 *H. H. P. C.* 251. In the case of Lord *Sheffield and Radcliff*, *Godb.* 323. it is acknowledged by lord keeper *Coventry* that the husband, in the life of his wife, cannot grant his curtesy, and that his forfeiture is a *discharge* of it. This word *discharged* evidently means that the estate shall go to the heir, discharged of the curtesy estate, 2 *Bac. Abr.* 219.; the reason of which is, as I take it, that by his attainder the inheritable blood between him and the issue is destroyed, and he stands in the same con-

dition, as if he had no issue by his wife; for if after attainder he had been pardoned and had *subsequent* issue, he would be tenant by the curtesy.

It has been said at the bar that the cases referring to the year book, 13 *H.* 7. 17. are not warranted by the year book, and that the particulars of that case are not enumerated, and that it does not appear whether *Keble* was a judge or not. To this I think it may be fairly answered, that whatever may have been the original of this ancient doctrine, or the objections to it, the doctrine itself has been so repeatedly recognised in our law books, and so uniformly brought down in all the abridgments of the law, that it seems to have become a rule of property, and not at this time of day to be impugned by any objections to the original authority.

The most plausible reason urged in favour of the forfeiture is, that in *Co. Litt.* 30. *a.* it is said that where a man after having inheritable issue conveys his wife's estate in fee, the feoffee shall hold after the wife's death, *against the heir*, during the husband's life; and it is inferred that whatever a man may grant he may forfeit. But the estate conveyed in that case was not the *curtesy estate*, for that had not vested; if it had it would have been forfeited to the heir by the feoffment in fee; but a *fee simple estate* in right of the wife; and the husband was estopped from claiming against the feoffee his life estate accruing afterwards; and as to the heir the curtesy having afterwards vested by the death of the wife it was immaterial to him whether the right was in the husband or in his grantee; he must wait till the death of the husband. And when it is considered that in the case cited there was nothing to prevent the vesting of the curtesy, after the death of the wife, whereas in the present case there arose an absolute bar to its vesting by the attainder of the husband, there can be no proper application of that case to the present. Besides, it is by no means a general rule that by attainder a man will *forfeit* as much as he may *grant;* for in a case not very dissimilar to this in principle, if issue in tail, in the life of his father, is attaint of treason and dies, it is no forfeiture of the estate tail; yet if he had levied a fine in his father's life it would have been a bar to his issue. *Godb.* 316. cites 3 *Rep.* 50. Sir *George Brown's* case, and abridged in 13 *Vin.* 447.

1799.
———
Lessee
of
PEMBER-
TON
*v.*
HICKS.

It is however urged on the part of the defendant that the words of our act of Assembly are of larger extent and comprehend more subjects of forfeiture than either the common law or the statutes of *England* do embrace; to this a proper answer was given at the bar, namely, that the act of Assembly confines the forfeiture to those rights and estates which they had on the 4th of *July* 1776 or at any time afterwards, in their own rights or to their use, *according to their respective estates or interests;* but if by law and by the attainder the curtesy estate was extinguished, no estate or interest remained to be forfeited.

Forfeitures in general, so far as they relate to the depriving the innocent of their property, can only be justified by reasons of public policy; and I should be averse to visiting the sins of the father upon the children, unless warranted by express authorities, which appear to me to be wanting in the present case.

I am therefore, upon the whole, of opinion that both on principle and authority, the curtesy estate of *Joseph Galloway* was not forfeited to the commonwealth by his attainder for treason; but that by such attainder that estate could never take place, and the inheritance was discharged of it forever; and that consequently the heir of the wife should recover.

YEATES J. Whether the premises in question were forfeited during the life of *Joseph Galloway* by his having issue previous to his attainder, which happened before the decease of his wife, depends on the words of the law of 6th *March* 1778.

What then was the estate of *Joseph Galloway* in these lands, in the life of his wife, after the birth of their daughter?

It has been contended by the *defendant*, that though the estate of the husband be not *consummate* until the death of the wife, yet that it hath such a beginning after issue had in the life of the wife as is respected in law for divers purposes: First, after issue had he should do homage alone and become tenant to the lord by the old feudal law. Secondly, if after issue the husband maketh a feoffment in fee and the wife dieth, the feoffee shall hold it during the life of the husband, and the heir of the wife shall not during his life recover it in a " *sur cui in vita;*" for it would not be a forfeiture, since the estate at the time of the feoffment was an estate of tenancy by the curtesy *initiate* though not *consummate. Co. Litt.* 30. a. *Ley.* 9, 10. It is therefore insisted that *Gallaway* in this case had more than an estate for life in these

lands; and that as he could grant them for the term of his own life, he could forfeit his interest therein for the same term. The husband by having issue is seised in his own right for life, and yet is seised in fee in right of his wife, and so as he is not a bare tenant for life; he therefore shall after issue receive and do homage alone during the life of the wife. *Co. Litt.* 67. *a.* As soon as a child was born the father began to have a *permanent* interest in the lands, which was not liable to be determined by the subsequent death or coming of age of the infant. 2 *Bl. Com.* 127. He might do many acts to charge the lands. *Ib.* 128. So in *Plowden* 264. it is said by *Weston J.* that if a woman takes husband and has issue and lands descend to her and the husband enters he is entitled to be tenant by the curtesy.

I frankly confess my sentiments on this subject have undergone a material change since the last argument. The definition of curtesy by *Littleton sec.* 35. is that it takes place *on* the death of the wife, the husband surviving her. So in 2 *Bl. Com.* 126. it is said the husband shall, *on the death of the wife,* hold the lands for his life as tenant by the curtesy of *England;* and many other books pursue the same expressions. According to Lord *Coke* the estate is not *consummate* until her decease. *Co. Litt.* 29. *a.* Such then is the legal as well as vulgar acceptation of the terms *estate by the curtesy,* that it does not completely vest until the wife's death. 2 *Bac. Abr.* 219. *Doc. and Stud. dial.* 2. *c.* 4. *fol.* 115.

The reason why under the feudal system the husband shall receive and do homage alone, during his wife's life, after issue had, is his having a seisin in fee in right of his wife; for as a mere tenant for life he shall not do homage. *Litt. sec.* 90. And this seems the true ground why the feoffment of the husband, after a child born, shall not be a forfeiture: his *future* interest and title to be tenant by the curtesy is involved and passes by it to the feoffee; though not to such purpose as to make him tenant by the curtesy which none but the husband himself can be. 2 *Bac. Abr.* 219. If he was merely tenant for life, his feoffment in fee would clearly be a forfeiture.

The husband may have a *permanent* interest in the land on the birth of a child, for certain purposes, but not for others. It may not be affected by any event happening to the child; but his inception of estate derived from such child may be extin-

*1799.*

Lessee
of
PEMBER-
TON
*v.*
HICKS.

guished by a subsequent civil disability, to take the land on the termination of the life of his wife.

In the *English* edition of *Plowden* (254) so much applauded by *Hargrave* in his note on *Co. Litt.* 23. *a.* it is said in the marginal note of the case above cited, that though the title of the husband is *initiate* by the seisin of the wife, it is not consummate nor begins to have any *effect* until her death.

Nor is it universally true that because an interest may be granted, it may therefore be forfeited. This consequence is denied by Lord *Coke* arguendo in *Venable's and Harris's* case, 2 *Leon.* 126. He says " a man seised in right of his wife may " grant but not forfeit. The husband may grant a term for years, " which he hath in right of his wife, but he cannot forfeit it. " A woman inheritrix taketh a husband, who afterwards is " attainted of felony; the king pardons him; they have issue;— " the husband shall be tenant by the curtesy; which proveth that " the king hath not the freehold by that attainder." *Popham,* who argued for the crown in the same case, concurs in denying the same consequence. 4 *Leon.* 112. So also *Croke* in Lord *Sheffield* and *Radcliff's* case. *Godb.* 316.

The plaintiff's counsel have insisted that the case before the court has already received a determination, and is not now open to be argued on general principles. They rely on the year book 13 *H.* 7. 17. which runs thus : " A man marries a feme inheri- " trix and has issue; he commits felony of which he is attainted; " the king pardons him ; *Keble* said that he should not be te- " nant by the curtesy by reason of the issue had before the " attainder ; but if he had other issue afterwards, he shall." It must I conceive be admitted, if these positions are received as settled law, and of course a rule of property, that they establish the plaintiff's claim.

I find from *Dugdale's Chronica Series* 75. contained in his *Origines Juridicales,* that *Keble* was called as a sergeant in the first year of *Hen.* 7. and in the same year book 14 *H.* 7. 7. in the 2d line, he is styled one of the king's sergeants. The dictums of *Keble* in 16 *H.* 7. 8. are cited with approbation in many books; as *F. N. B.* 84 *A.* 98 *B.* 456 *F.* The assertions of eminent counsel, uncontradicted at the time, or by subsequent cases, have always been received as evidence of the law; such dictums are often repeated in the year books, and in the reports of *Plowden* and *Coke* particularly. *Glyn* C. J. in

*Foster* and *Ramsay*, 2 *Sid.* 150. expresses. himself thus, " Our " very case was put by *Stephens*, the defendants' counsel, " *Rex* against *Boriston and Adams*, *Noy* 159. and not denied " by the court; though *Fleming*, who argued on the other " side, denied it." Both the counsel who argued in *Noy* 159. 168. admit the authority of the case in question; and *Coventry* attorney general, in 2 *Roll. Rep.* 340. Lord *Sheffield and Radcliff*, and *Godb.* 323. *S. C.* also admits it. It is moreover cited in *Co. Litt.* 391. *b. in margine;* by *Allen* in *Foster* v. *Ramsay*, 1 *Keb.* 217.; and by Lord C. J. *Bridgman id.* 701. *S. C.* It is so much relied on by sergeant *Hawkins* in his 2d part of *Pleas of the Crown*, c. 49. sec. 49. p. 457. that he reasons from it as a settled case, against even Lord *Coke's* opinion. The case is likewise recognised in his *P. C.* 196. and is there said to accord with the opinion of Justice *Fitzherbert;* by *Broke*, *Tit. Tenant by the Curtesy pl.* 15.; by *Viner* 7 *vol.* 162. *pl.* 4. and 4 *vol.* 273. *pl.* 20.; and by Lord Chief Baron *Comyns* in the 3d volume of his *Digest* 244. In *Terms de la Lèy*, first published in 1563, sub voces *Curtesie of England*, the doctrine is set forth at large, but no authority is cited, though the words in the year book are used.

The assertions. of sergeant *Keble* are also warranted by analogy drawn from other books. Thus in *Perkins sec.* 387. if the husband commits treason, felony, or murder, and is attainted, this shall oust the wife of dower; but if after the attainder the husband purchases his charter of pardon, then of all such estates of inheritance of which the husband is seised after his pardon, which the issue, that he may by possibility have by his wife, may inherit by the common law, she shall have dower &c.; for notwithstanding she was his wife at the time of attainder, yet the issue which the husband may have by her after his pardon, is inheritable. If a son and heir be outlawed in the time of his father, and afterwards in the life of his father procures his pardon, and then his father dies, he shall not have his lands by descent, but the lord of whom they are held shall have them by escheat. *Fitz. Discent.* 17. *Trin.* 13 *E.* 1. So if the eldest son be attainted of felony and obtains a pardon in the life of his father, who afterwards dies, the land shall escheat, because the pardon cannot avoid the corruption of blood. *Bro. Discent.* *pl.* 44. 8 *E.* 1. Pardon restores not to blood (without an act of parliament) except as to issue begotten afterwards. *Co. Litt.*

1799.

Lessee
of
PEMBER-
TON
*v.*
HICKS.

8. *a*. 391. *b*. 392. *a*. *S. P. C*. 195. *B*. 3 *Inst*. 233. *W. Jo*. 34. 1 *H. H. P. C*. 358. A person attainted, though he hath a pardon, cannot claim by descent. *Cro. Car*. 477. *Bacon's use of the Law* 140, 1. Thus, it appears to me, that the authority of the case in 13 *H*. 7. 17. is fully vindicated, as well from the uncontradicted arguments of counsel and of judges, and its adoption by elementary writers of the first reputation, as from the general principles and analogy of the law. To adopt the language of Judge *Moreton* in 1 *Mod*. 40. as to another resolution (*Harding* v. *Warner*, Latch 24.) " The case has walked through " all the courts of *Westminster Hall* undisturbed."

But the present case rests not solely on this authority: it is fully settled that tenants by the curtesy and in dower come in by descent, merely by act of law. *Co. Litt*. 18. *b*. Now in all cases (except intails) attainder of treason or felony corrupts the blood, upwards and downwards, so that no person that must make his derivation by descent to or through the party attainted, can inherit. *Co. Litt*. 8. *a*. 84. *b*. 392. *a*. 1 *H. H. P. C.* 356. 358. *Dy*. 274. And though an alien may take by *purchase* by his own contract, that which he cannot retain against the king, yet he is not enabled to take by *act in law;* for the law which does nothing in vain, will not give an inheritance or freehold by act in law where it cannot be kept; and therefore the law will not give descent, curtesy, dower, guardianship. And in respect of this incapacity he does resemble a person attainted, with this difference, that the latter is a person whom the law takes notice of, and therefore the eldest son attainted surviving the father shall impede the descent to the younger son. *Collingwood* v. *Pace*, 1 *Ventr*. 417. per Lord Chief Baron *Hale*. *S. C*. and *S. P*. 1 *Keb*. 672. *S. P. Stra*. 332. by counsel arguendo.

Here then as to *Joseph Galloway* the *vinculum* of descent was destroyed by his political offence. To use the expressions of Mr. *York* in his considerations on the law of forfeiture (p. 88.): " Bound as he was to the community by nature, moral " duty, and experience, he disclaimed the law and was dis- " claimed by it; by his own voluntary act, he has shewn himself " *an alien in affection*." He therefore shall not be admitted to the legal right of descent; his title shall never arise even for the benefit of the commonwealth; and the estate of his late wife shall be discharged forever of his claim.

This was the reasoning of *Coventry*, attorney general, who would not readily have given up the rights of the crown, in Lord *Sheffield and Radcliff*. The husband by attainder of treason or felony, forfeits his right as tenant by the curtesy by way of discharge; or as the same case is reported in 2 *Rol. Rep.* 340. if the husband commits felony or treason, he forfeits the dower of his wife, and yet this is a thing in action, and goes in discharge or surrender. 13 *H.* 7. 17. A man takes a woman inheritrix to wife, and has issue and commits felony, he shall forfeit his tenancy by the curtesy.

It appears therefore that *Joseph Galloway* was legally incapable of taking the premises in question after the decease of his wife, by right of *descent* as contradistinguished from *purchase*. His claim was intercepted by his attainder, and could not take effect by his civil death any more than if he had paid the common debt of nature. But the case is otherwise as to his daughter; for where a person attainted hath issue by a woman seised of lands of inheritance, such issue may inherit to the mother, though he or she never had any inheritable blood from the father. 2 *Hawk.* 457. and the cases there cited. So children born after the father's attainder may be heirs to each other on the principle of *Collingwood* v. *Pace*, that the children of an alien may be heirs as between themselves though not as to the father. *Harg. Co. Litt.* 8. *a. note 5.* 12. *a. note 7.* Consequently if the father had no capacity to take the lands the daughter would become entitled thereto as heir of the mother, though in the life of the father.

A few cases yet remain to be cited which I soon shall pass over. Where the husband commits treason the common law gives a *forfeiture* of the inheritance of the wife *only during the coverture*. It was otherwise by stat. 26 *H* 8. *c.* 13. as to treason; but it is now remedied by 5 *and* 6. *Ed.* 6. *c.* 11. *Jenk.* 287. *Staundf.* 187. *Vide Co. Litt.* 351. *a. Pollexf.* 51. *Parsons* v. *Pearse et al.* As to lands of inheritance if the husband be seised in right of his wife, and is attainted of treason, the king hath the freehold during the coverture. 1 *H. H. P. C.* 251. And Lord *Coke* asserts the same doctrine in his 3*d Inst.* 19.

On the whole I am of opinion that judgment be entered for the plaintiff.

*Margin:* 1799. Lessee of PEMBERTON *v.* HICKS.

1799.

Lessee
of
PEMBER-
TON
*v.*
HICKS.

SMITH J. Whether the law inflicting the punishment of forfeiture of property on the commission of high treason be founded in mercy or in rigorous and austere justice, can have no weight in determining the question before us. From one point of view the law of forfeiture for high treason may seem hard and cruel; the innocent and helpless part of a family suffer for the crime of the head of it over whom they have no control. Were it possible for human legislators to enact perfect laws, it would be the wish of every benevolent mind to have this law altered in its effects upon such persons; but inexperience must unite with benevolence in the minds of those who will propose further alterations than have been made in the constitution of the United States in this respect, *article 3. sec. 3.* and the laws of this state. 1 *State Laws* 846.

If the law of forfeiture for treason were altered, so as that such parts of a family might suffer no punishment, such alteration would indeed be merciful to such individuals; but the general effect would be extensive cruelty to society at large, and would frequently end in its dissolution: as self-preservation is the first law of nature, so it is likewise the first law of society.

In every nation, under every government, there are many men of gloomy discontented minds, of vehement spirits, of disappointed or perverted ambition, of desperate fortunes. The minds of such men are restless, ever on the rack to gratify their malignity or their ambition, or to repair their shattered fortunes. So far as they consider themselves, they are desperate; the peace, welfare, or happiness, even the existence of the government which protects them can have no influence in restraining such men from the most desperate measures to accomplish their purposes. The only human consideration which can withhold them from endangering the nation, is their attachment to their wives and children, which is frequently implanted, for wise purposes, unusually strong in the minds of such men by the all wise Author of our being.

From this point of view the law of forfeiture is merciful to mankind; it may sometimes be productive of partial ill, but its general effect will be universal good. Besides, property is created and preserved by government and laws; consequently every government may regulate it in such a manner as the society deems most conducive to the good of the whole nation.

By some it may be said that the case of *J. Galloway* is dif-
ferent from that of a subject under an established government
who commits treason. I answer that in every nation the will of
the majority must govern, to which every one of the minority
must submit as soon as the society becomes a nation. From the
time independence was declared, it became the duty of every
citizen of the United States not only to submit to it, but to as-
sist in its establishment. In trials for high treason immediately
after the revolution in England, it was never alleged that the
case of any of the prisoners was different from the case of a sub-
ject under an ancient government, who has committed treason.
Moreover, could it have any weight, which I am clear it has
not, *J. Galloway* assisted in those measures, which, according
to the common course of events led to that independence,
which he afterwards laboured to destroy.

The question therefore is not whether the law of forfeiture
for high treason be humane or rigorous; but the question is
what is the law? On this question it is our duty and we are
competent to decide. The law being penal, it is our duty to con-
strue it not to extend beyond the letter of it.

Any lawyer who has never had occasion to examine the
point now before us, indeed any person, though not a lawyer,
who is acquainted with the history of England, and reflects how
many trials there have been for high treason, would, on the case,
being stated, be ready to take it for granted that it had been
long ago and often decided; and I confess that I was struck
with surprise when on examination after the case was first sta-
ted, I could not find one case in the books in which it has even
come before the court.

It seems to me that the principal difficulty in the case before
us arises from the inaccuracy of the writers on the subject in
not distinguishing whether the baron committing treason had or
had not had issue at the time the treason was committed; and
in not adverting to the alteration made since 13 *H. 7. 17.* by
the statutes 26 and 33 *H. 8.*

    " A man takes wife an inheritrix—has issue—commits felo-
" ny of which he is attainted; the king pardons him. *Keble* said
" he shall not be tenant by the curtesy by reason of the issue
" before the attainder, but if he have issue afterwards, he shall."
13 *H. 7. 17.* This position is the foundation of the plaintiff's
claim; and although it does not appear what case or if any case

1799.

Lessee
of
PEMBER-
TON
*v.*
HICKS.

was then before the court, and therefore it may be inferred that this is a mere *obiter dictum* of *Keble*, yet did the principle of it stand unopposed, although it has received no judicial confirmation, that principle would have weight with me in favour of the plaintiff; it being well known to every lawyer that very many cases which have been since from time to time recognised as law, derive their original authority from similar *dicta* in the year books. But let us consider that *before issue* " If " baron and feme be seised in fee in a seignorie *in the right* " *of feme, baron* shall not receive homage alone; but he and " feme together: but if baron in that case *hath issue* by feme " then he shall receive homage alone during the life of feme. " And the reason is because he *by having issue is entitled to an* " *estate for the term of his own life* IN HIS OWN RIGHT, and yet " is seised in fee in right of his wife; so as he is not a bare ten- " ant for life. But if feme die then he hath only but an estate for " life, and then he cannot receive homage." *Co. Litt.* 67. *a.* So " if feme seised of lands in fee simple or fee tail by homage, " taketh baron and *hath issue*, then baron in life time of feme " shall do homage because he hath title to have the tenements " by the curtesy of *England* if he surviveth feme, and also he " holdeth in right of feme." *Litt. sec.* 90. " *After issue* he shall " do homage alone and is *become tenant* to the lord, and the " *avowry* shall be made on baron only, during the life of feme." *Co. Litt.* 30. *a.*; and " as soon as a child is born the father " begins to have a *permanent interest* in the lands; and this " estate being once *vested* in him is not liable to be defeated by " the subsequent death or coming of age of the infant." 2. *Bl. Com.* 127. Again; " If a man seised of lands in fee hath issue " a daughter who takes baron and *hath issue*, the father dies, " baron enters, he shall be tenant by the curtesy albeit the issue " was had before feme was seised. And so it is although the " issue had died in the life time of her father before the descent " of the land." *Co. Litt.* 29. *b.* So " if a woman tenant in tail " general takes baron and hath issue, which issue dieth, and " feme dieth without any other issue, yet baron shall be tenant " by the curtesy, albeit the estate tail be determined." *Co. Litt.* 30. *a.* And " if after issue, baron makes a feoffment in fee, and " feme dieth, the feoffee shall hold during the life of baron, " and the heir of feme shall not during his life recover it " in a *sur cui in vita.*" *Ib. F. N. B.* 194. Why? Not because

he has *less* than an estate for life, for such feoffment would be a forfeiture of even an estate for life; but because he has *more*, he is also *seised of the fee in right of feme*.

From these various authorities it follows: 1. That by having issue the estate is *vested* in baron for life. 2. That although the issue die before feme is seised, yet the instant she becomes afterwards seised, baron becomes entitled to the estate for the term of his own life in his own right. 3. Nay, so absolutely and indefeasibly does the estate become *vested* in baron for life by having issue, that the *determination* of an estate tail by the death of feme, the last tenant in tail, does not affect baron's right. It is impossible even to suppose a stronger instance to demonstrate that *after issue* no circumstance can make the least alteration in baron's *vested right to her* estate for life. This gives a full answer to 1 *Ventr.* 417. that an alien or attainted person cannot take by any act in law, because here he *had taken;* the estate had by having issue become *vested* in him during his life.

In *Godb.* 323. *Coventry* attorney general says that "Tenant "by the curtesy, during the life of feme cannot convey it, but he may forfeit it by way of discharge;" and he cites 13 *H.* 7. 17. but the only words on the subject in 13 *H.* 7. 17. are those which I have literally translated and before stated. In the first point the attorney general is contradicted by *Co. Litt.* 30. *a.* and the other was not then law.

The same doctrine is laid down in 2 *Bac.* 219. where it is said that persons attainted of treason or felony &c. shall not be tenants by the curtesy; that their title shall *never arise* even for the benefit of the king, but that the estate of the wife shall be *discharged of it forever*. The authorities which *Bacon* cites are *Bro. Tit. Curtesy pl.* 15. *p.* 250. which is a transcript of 13 *H.* 7. 17. there quoted. *Staundf.* 196. is the same, and he quotes the same; and *Godb.* 323. He also cites *Co. Litt.* 291. *a.* 3 *Inst.* 43. as authorities in analogous cases; and in a note to it he states the words of *Keble*, for which he cites 7 *Co.* 25. by which I am confirmed in my want of confidence in the accuracy of the best abridgments, as authorities, as I observe that in neither of those pages is the doctrine laid down, which he states.

So that all the authorities respecting the *discharge* of the wife's estate rest on the dictum of *Keble*. In *Bacon* it is said the title of tenant by the curtesy *shall never arise*. This expression shows that he is laying down the law where a man com-

mits treason *before issue;* because by *having issue* the estate *has arisen* and *is vested* in the husband for the term of his own life; it has therefore become absolute and indefeasible *during his life*. " The wife's estate shall be discharged of it forever." From what time is this discharge to operate? From the time of the treason, or from the death of the wife? The expression is so general, that the attainder is to have no effect upon the estate of the wife. If the dictum of *Keble* 13 *H.* 7. 17. were law, this would be the necessary consequence. For " a pardon shall not " devest any interest either in lands or goods vested in the sub- " ject; neither shall it, without express words of restitution, " even devest any title from the king." 3 *Mod.* 101. " If the " king present to a benefice on being entitled to it by simo- " niacal contract, his presentee shall not be removed although " the simony is pardoned." 2 *Mod.* 52. 2 *Hawk.* 396. On the principle therefore of 13 *H.* 7. 17. the executors of Mrs. *Galloway* may recover the mesne profits from the time the estate was taken possession of by the commonwealth, if the defendant has been in possession so long; nay, she herself (as he became dead in law) might have recovered it by ejectment. But that this is not the construction, that this dictum cannot be law at this day, is clear from two most respectable authorities. For Lord *Hale* 1 *P. C.* 251. and Lord *Coke* in 3 *Inst.* 19. lay it down that where "baron is seised *in right of* feme of lands of in- " heritance and is attainted of treason, the king shall hold *during* " *the coverture*." It is not stated whether issue was had before the treason or not; but as the husband, though seised in fee in right of his wife, yet by having issue is entitled to an estate for term of his own life *in his own right*, it must be inferred that Lord *Hale* and Lord *Coke* confine their position to the case of treason committed by baron *before* issue. Let it not be said that there is no difference whether the treason be committed *before* or *after* issue as to this purpose: by issue the estate of baron in the lands of inheritance of feme becomes entirely altered; it becomes from that moment *vested and permanent for his life*. Lord *Hale* adds, " and so if tenant for life be attainted of treason the king hath " the freehold during the life of the party attainted." I have repeatedly stated that by having issue baron is entitled to an estate for term of his own life in his own right, (he is become *tenant* to the lord, *Co. Litt.* 30. *a.*) and therefore if attainted of treason, the king hath the freehold during his life.

Again: If feme *tenant in tail* takes baron, and he becomes entitled to an estate by the curtesy, which he does by having issue capable of inheriting, not only his wife and he, but *he alone* may make a good tenant to the præcipe to suffer a recovery to bar the intail. *Cases Talb.* 167. *Harg. Co. Litt.* 326. *a.* where, and in a note to *Ca. Talb.* said to be a more accurate statement of Lord *Talbot's* argument, it is said in general terms, "That baron " alone may by deed only and without any fine levied by feme " convey a sufficient freehold to the grantee to make him a " tenant to the præcipe."

The last but not the least consideration is, "If a man taketh " feme seised of lands in fee and *hath issue,* and after feme is " attainted of felony so as that the issue cannot inherit to her, " yet he shall be tenant by the curtesy in respect of the issue " which he had before the felony : but if feme had been attainted " before issue, albeit he hath issue afterwards he shall not be " tenant by the curtesy." *Co. Litt.* 40. *a.* Now suppose baron and feme both commit treason &c. at the same time after issue, and are attainted. Baron's vested right to tenancy by the curtesy of her estate is not forfeited by her attainder. According to the conclusion deduced from 13 *H.* 7. 17. her estate is not forfeited by the attainder of baron, but is *discharged for ever :* therefore in such case it is not forfeited at all ; a position which it seems to me cannot be supported.

I will take another position and consider the subject from a different point of view. I will lay it down that the point stated in 13 *H.* 7. 17. was then the law of the land, and will inquire whether or not it be even the law of *England* since 26 *H.* 8. *c.* 13. and 33 *H.* 8. *c.* 20.; and more particularly whether since the act of Assembly by which *Joseph Galloway* was attainted, and which must be our guide in forming our judgment upon the present occasion, the words of *Keble* be the law applying to persons attainted by this act of Assembly or not. " By the com- " mon law all lands of inheritance whereof the offender is seised " in his own right and also all rights of entry to lands in the " hands of a wrong doer, are forfeited to the king upon attain- " der of high treason." 2 *Hawk.* 448. 2 *Bac.* 675. It may therefore be inferred that though the husband by having issue is entitled to an estate in the lands of the wife for term of his own life in his own right, yet being seised in fee in right of his wife such lands are not forfeited to the king by common law, on the

1799.

Lessee
of
PEMBER-
TON
v.
HICKS.

attainder for high treason; but she shall hold them discharged of his right to tenancy by the curtesy. Lands *intailed* were not forfeitable at common law or by 25 *E.* 3. *c.* 2. on attainder of the tenant in tail for high treason, saving only during the life of the tenant in tail. 3 *Inst.* 19. By *stat.* 26 *H.* 8. *c.* 13. every person attainted of high treason " shall forfeit to the king all such " lands, tenements and hereditaments which he shall have *of any* " *estate of inheritance, use or possession,* by any *right, title* or " *means.*" It has been adjudged that by force of the words " of " any estate of inheritance," *estates tail* are forfeited, because these words would be void if they did not include estates tail; for estates in fee simple were forfeited before. 2 *Hawk.* 452. 2 *Bac.* 580. *Co. Litt.* 372. *b.* And by *stat.* 33 *H.* 8. *c.* 20. " If " any person is attainted of high treason by common law or " statutes; every such attainder by the common law shall be of " as good strength, value, force and effect, as if it had been done " by authority of Parliament. And the king shall have as much " benefit and advantage by such attainder as well of *uses, rights,* " *entries, conditions,* as possessions, reversions, remainders and " *all other things,* as if it had been done and declared by autho- " rity of Parliament."

The words of each of these acts of parliament are more extensive than the words of forfeiture by the common law. The words in the first act have been held to extend to estates tail. The words in the second act will include tenancy by the curtesy; for baron by having issue is *entitled to an estate* for term of his own life *in his own right.*

The words of the act of assembly by which *Joseph Galloway* was attainted are still far more extensive than the words of these statutes. The legislature could not have used more comprehensive general words to embrace the subject matter in question. It necessarily follows that *Joseph Galloway* forfeited all his *estate* and *interest* in the premises for the *term of his own life.* Therefore from either point of view, and especially from the last, my opinion is that judgment be given for the defendant.

Judgment for Plaintiff.